**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **JAMIE HOLMES-KRIGER,** | * |
| 3963 Alderney Mews | |
| Salisbury, MD 21804 | * |
| | |
| *Plaintiff,* | *CIVIL CASE NO._____ |
| | |
| **v.** | * |
| | |
| **SALISBURY UNIVERSITY,** | * |
| 1101 Camden Avenue | |
| Salisbury, MD 21801 | * |
| Serve: Attorney General Brian Frosh | |
| 200 St. Paul Place | * |
| Baltimore, MD 21202 | |
| | * |
| *Defendant.* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff Jamie Holmes-Kriger through counsel makes this Complaint against her former employer Salisbury University ("SU") for refusing to promote Ms. Holmes-Kriger to Registrar and then wrongfully terminating her employment as Associate Registrar.  SU retaliated against Ms. Holmes-Kriger because she exercised her rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, ("FMLA") by taking intermittent leave to care for her daughter with a serious medical condition, and discriminated against Ms. Holmes-Kriger due to her association with her daughter in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 709 *et seq*.  Ms. Holmes-Kriger seeks declaratory and injunctive relief and awards of compensatory damages, liquidated damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by the laws of the United States.

2.       Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to the claim occurred in the District of Maryland, and there is no other district in which this action may be brought.

## PARTIES

3.       At all times relevant to this Complaint, Ms. Holmes-Kriger was an employee of SU and a resident of Wicomico County, Maryland.

4.       SU is a constituent institution of the University System of Maryland and was Ms. Holmes-Kriger's employer as defined by the FMLA and Rehabilitation Act.

## FACTS COMMON TO ALL COUNTS

5.       Ms. Holmes-Kriger is an SU alumna.  She began working for SU in 2006.  In 2012, she was promoted to Associate Registrar.  She then spearheaded the Office's application of electronic forms and online workflow processes, helped implement electronic transcripts, and, through a grant she obtained, created an online training module to educate the community when working with military-connected students.  In addition, since 2008, Ms. Holmes-Kriger has taught one computer course a semester as an adjunct faculty member.  Outside of her work duties, Ms. Holmes-Kriger advised a student fraternity, founded and funded a scholarship benefiting SU students whose lives have been touched by cancer, and volunteered with SU's Youth Innovation Academy.

6.      Beyond the University, Ms. Holmes-Kriger is the immediate past president of the American Association of Collegiate Registrars and Admissions Officers' Chesapeake and Potomac chapter and has earned its Emerging Leader Award.

7.      Beginning in October 2018, SU granted Ms. Holmes-Kriger intermittent FMLA leave to care for her then ten-year-old daughter who had a serious but unknown health condition.

8.      Ms. Holmes-Kriger's daughter's health had progressively worsened since January 2018 to the point she vomited several times a day; experienced extreme fatigue; and had severe acid reflux.

9.      Although the cause of her daughter's medical condition remains unknown, medication has alleviated some of her symptoms. Nonetheless, Ms. Holmes-Kriger has had to continue taking FMLA leave to care for her daughter when she becomes violently ill or to travel to seek care from medical specialists.

10.     From October 2018 until July 1, 2019, Ms. Holmes-Kriger estimates she took no more than 30 hours of FMLA leave to care for her daughter.

11.     During this period, Ms. Holmes-Kriger's supervisor was Jacqueline M. Maisel, SU's Registrar.  Ms. Maisel had worked with Ms. Holmes-Kriger since 2012.

12.     Ms. Maisel never questioned Ms. Holmes-Kriger's use of FMLA leave and granted Ms. Holmes-Kriger permission to work from home if her daughter was ill, but Ms. Holmes-Kriger was able to work.

13.     Ms. Holmes-Kriger was able to perform the vast majority of her job duties from home.  If Ms. Holmes-Kriger did take FMLA leave to care for her daughter, she worked nights and weekends to make up the time she missed.

14.     In spring 2019, Ms. Holmes-Kriger was awarded the Daily Record's Top 100 Women Award and the Chesapeake and Potomac Association of Collegiate Registrars and Admissions Officers' Steven E. Smith Leadership Award.

15.     In June 2019, Ms. Maisel announced her retirement effective July 1, 2019.

16.     Shortly thereafter, Karen Olmstead, SU's Provost and Senior Vice President of Academic Affairs, announced Melissa Boog, who had been recently appointed Associate Vice President of Academic Affairs, would start overseeing the Registrar's Office beginning July 1, 2019.  Previously, the Office had reported directly to Dr. Olmstead.

17.     Dr. Olmstead also announced Dr. Boog would be named Acting Registrar as of July 1, 2019.

18.     Ms. Maisel had previously warned Ms. Holmes-Kriger that Dr. Boog had grilled her about Ms. Holmes-Kriger's absences, even though, at that time, Ms. Holmes-Kriger was not in Dr. Boog's chain of command.

19.     Ms. Maisel told Dr. Boog that Ms. Holmes-Kriger had been granted intermittent FMLA leave to care for her sick daughter.  Ms. Maisel further told Dr. Boog that Ms. Holmes-Kriger was an exemplary employee and completed all of her duties.

20.     Once Dr. Boog assumed oversight of the Office of the Registrar, she performed very few Registrar duties.  In fact, Dr. Boog's office was located outside of the Office and she had very little day-to-day interaction with Ms. Holmes-Kriger or the Registrar staff.

21.     Ms. Holmes-Kriger effectively ran the Office following Ms. Maisel's retirement.

22.     In August 2019, SU posted a job advertisement for Registrar and Ms. Holmes-Kriger applied.

23.     Ms. Holmes-Kriger was one of three finalists for the position.

24.     Following her final interview, members of the search committee told Ms. Holmes-Kriger she had the best presentation and they had been recommended her to Dr. Boog, the decisionmaker.

25.     On the morning of October 3, 2019, Dr. Boog met with Ms. Holmes-Kriger to notify her she had not been selected for the Registrar position.

26.     During their meeting, Dr. Boog admitted Ms. Holmes-Kriger had the best presentation, but told her she did not get the job because she missed too much time from work. Dr. Boog told Ms. Holmes-Kriger that, "to supervise staff, you must be present at work."

27.     Ms. Holmes-Kriger protested she had been granted intermittent FMLA leave to care for her sick daughter and had permission from Ms. Maisel to work from home.

28.     Dr. Boog responded it did not matter whether Ms. Holmes-Kriger was taking FMLA leave because the "perception" was that Ms. Holmes-Kriger was never at work.

29.     Dr. Boog then told Ms. Holmes-Kriger she did not care what "arrangements" had been made with Ms. Maisel and that, moving forward, she could not work from home and must be in the office at all times.

30.     This was the first time Ms. Holmes-Kriger had been told by Dr. Boog she could not work from home.

31.     Dr. Boog's claim that Ms. Holmes-Kriger was "never at work" was false.  Ms. Holmes-Kriger estimates she worked from home once every two weeks and had taken thirty-five hours of FMLA leave since Dr. Boog was named acting Registrar.

32.     Following her October 3 meeting with Dr. Boog, Ms. Holmes-Kriger stopped working from home, but continued to use intermittent FMLA leave as needed.

33.     On October 7, 2019, Ms. Holmes-Kriger emailed Dr. Boog she needed to use her FMLA leave to take the day off to care for her daughter.

34.     In response, Dr. Boog told Ms. Holmes-Kriger she had to renew her leave and instructed her to speak with the human resources department.

35.     That same week, Ms. Holmes-Kriger spoke to a member of the search committee, who confirmed the committee had recommended Ms. Holmes-Kriger and the other two finalists to Dr. Boog and Dr. Boog had selected whom she wanted for the position.

36.     According to that same member, Dr. Boog had criticized Ms. Holmes-Kriger for "lying on her timesheets" and had complained about her not being at work.

37.     Dr. Boog's allegations were completely false and unfounded.

38.     On Tuesday, October 22, 2019, Ms. Holmes-Kriger performed maintenance and clean up on the Office's computer drives, after she was unable to locate a number of documents.

39.     On Friday, October 25, 2019, Ms. Holmes-Kriger received an email from Doug Goodyear, SU's Systems Architect and Information Technology specialist, notifying her that a number of staff folders in the directory were empty and requesting whether they could be restored.

40.     Ms. Holmes-Kriger immediately responded the files could be restored.  She explained she had cleaned up her directory earlier in the week, but told Mr. Goodyear she did not believe she had made changes to any other staff directories.

41.     At no point did Mr. Goodyear tell Ms. Holmes-Kriger that she had deleted the staff files.

42.     On Monday, October 28, 2019, Ms. Holmes-Kriger met with Dr. Boog for a scheduled meeting.

43.     This was only the second one-on-one meeting Ms. Holmes-Kriger had had with Dr. Boog since she was named acting Registrar.  Ms. Holmes-Kriger had been trying to have this meeting with Dr. Boog since the summer.

44.     Dr. Boog had made a habitat of ignoring Ms. Holmes-Kriger's emails and her requests for meetings.

45.     At the conclusion of their October 28 meeting, Dr. Boog mentioned she had been made aware of the deleted files.

46.     Dr. Boog accused Ms. Holmes-Kriger of deleting the files.

47.     Ms. Holmes-Kriger explained she had been performing system maintenance following the installation of a new university drive and had deleted old and duplicate files from her directory.  Ms. Holmes-Kriger said that, if she deleted files from other staff directories, it was a mistake.

48.     In any event, Ms. Holmes-Kriger confirmed all the deleted files had been promptly restored.

49.     Ms. Holmes-Kriger told Dr. Boog she planned to clean up the files again and delete the files she intended to delete the first time around.

50.     Dr. Boog never instructed Ms. Holmes-Kriger not to delete any more files.  Indeed, maintaining electronic files was part of Ms. Holmes-Kriger's job duties.

51.     Later that day, Ms. Holmes-Kriger called Mr. Goodyear to find out what had happened with the electronic files and what files had been deleted to ensure no future mistakes were made.

52.     Mr. Goodyear was not available to take her call.

53.     On October 30, 2019, Marty Hunter, whom Dr. Boog had selected as Registrar, started work at SU.

54.     Ms. Holmes-Kriger continued with her job duties without incident or complaint until November 14, 2019.

55.     At 4:00 p.m. on November 14, Ms. Holmes-Kriger was summoned into a meeting with Dr. Boog and SU's Human Resources Administrator Marissa Chavez.

56.     At the meeting, Dr. Boog interrogated Ms. Holmes-Kriger about what files she had deleted earlier in the month and why she had deleted those files.  Ms. Homes-Kriger explained that, with the multiple university drives, documents had been saved on the wrong drives.  She told Dr. Boog she had tried to clean up the drives by saving files on the correct drive and deleting old and duplicate files.

57.     When questioned what had happened to the other staff files, Ms. Holmes-Kriger responded that, if she had deleted their files in the process, it was a mistake.  Dr. Boog replied, "Don't you teach a computer class?" apparently insinuating Ms. Holmes-Kriger did not make a mistake, and had intentionally deleted the staff files.

58.     Dr. Boog informed Ms. Holmes-Kriger she was suspended effective immediately pending an investigation.

59.     Prior to suspending Ms. Holmes-Kriger, Dr. Boog did not speak to Mr. Hunter, Ms. Holmes-Kriger's direct supervisor.

60.     As of December 3, 2019, Ms. Homes-Kriger had not been questioned as part of the investigation or presented with information about the files she allegedly had deleted. Consequently, Ms. Holmes-Kriger emailed Ms. Chavez seeking information about the status of the investigation and any appeal rights available to her.

61.     Within thirty minutes of sending the email, Ms. Chavez responded the investigation was over and instructed her to meet with Dr. Boog and herself the following day at 9:00 a.m.

62.     Dr. Boog began the meeting on December 4, 2019 by telling Ms. Holmes-Kriger she was fired.  However, Dr. Boog added that, if Ms. Holmes-Kriger wanted to quit in lieu of being fired, nothing negative would be added to her employee file.

63.     Ms. Holmes-Kriger asked a number of questions which Dr. Boog refused to answer, telling her to õread the letter,ö and handed her a letter dated December 3, 2019 stating she had been fired for willful neglect of duty and gross misconduct arising from the deleted electronic files.

64.     Ms. Holmes-Kriger protested her termination was in retaliation for her taking FMLA leave given Dr. Boog had made it clear she did not approve of taking time off from work to care of her sick daughter.  Dr. Boog did not deny the allegation.

65.     The meeting effectively concluded because neither Dr. Boog, nor Ms. Chavez would speak to Ms. Holmes-Kriger, exhorting her to õread the letter.ö

66.     According to Dr. Boogøs December 3 letter, Ms. Holmes-Kriger purposefully deleted staff files on October 22 and continued to delete files after Dr. Boog allegedly expressed concern about file deletion.

67.     There is absolutely no evidence to suggest Ms. Holmes-Kriger purposefully deleted staff files, that the Office experienced any disruption as a result of files that may or may not have been deleted by Ms. Holmes-Kriger, or that Dr. Boog instructed Ms. Holmes-Kiger not to delete electronic files.

68.     Ms. Holmes-Kriger promptly appealed her termination to Charles Wight, SU's President, complaining Dr. Boog had terminated her in retaliation for taking intermittent FMLA leave.

69.     By letter dated December 23, 2019, President Wight denied Ms. Holmes-Kriger's grievance without a hearing.

70.     Since Ms. Holmes-Kriger's termination, all employees of the Registrar's Office, most of whom are Ms. Holmes-Kriger's close friends, have been instructed not to speak to Ms. Holmes-Kriger.

71.     Ms. Holmes-Kriger had dedicated virtually her entire adult life to SU.  Working at SU was not a job or career choice, but a life choice.  Just prior to her termination, Ms. Holmes-Kriger gave a presentation to the campus with the theme, "We are SU, I am SU."

72.     Ms. Holmes-Kriger's termination from SU has uprooted her and her young family's life. She was left without a full-time job and without much needed medical insurance to care for her sick daughter.

73.     As a result of her improper termination, Ms. Holmes-Kriger's reputation has been irreparably tarnished, and she has suffered economic and non-economic losses, loss of prestige, and emotional distress accompanied by physical conditions.

## CAUSES OF ACTION

### COUNT I
### FMLA RETALIATION
### WRONGFUL TERMINATION

74.     The facts alleged are incorporated by reference.

75.     Dr. Boog, acting as the decisionmaker for SU, willfully and in bad faith retaliated against Ms. Holmes-Kriger for taking intermittent FMLA leave and wrongfully terminated Ms. Holmes-Kriger's employment because she exercised her rights under the FMLA.

**WHEREUPON**, Ms. Holmes-Kriger respectfully requests this Honorable Court grant the following relief:

A.     Declare SU violated Ms. Holmes-Kriger's rights under the FMLA;

B.     Enter judgment in favor of Ms. Holmes-Kriger and against SU for compensatory damages in the form of back salary with fringe benefits from the date of her termination through trial;

C.     Order SU to reinstate Ms. Holmes-Kriger, or, in lieu thereof, enter judgment in favor of Ms. Holmes-Kriger and against SU for compensatory damages in the form of future lost wages with fringe benefits commencing from the date of trial and extending for a reasonable period into the future;

D.     In addition to the foregoing actual damages, award Ms. Holmes-Kriger liquidated damages in an amount equal to her actual damages;

E.     Assess reasonable attorneys' fees and costs of suit in favor of Ms. Holmes-Kriger and against SU; and

F.     Award Ms. Holmes-Kriger prejudgment and post-judgment interest on her actual damages, liquidated damages, and attorney's fees; and

11

G.      Grant Ms. Holmes-Kriger such other and further relief as the nature of her cause may warrant.

## COUNT II
## FMLA RETALIATION
## FAILURE TO PROMOTE

76.     The facts alleged in paragraphs 1-72 are incorporated by reference.

77.     Dr. Boog, acting as the decisionmaker for SU, willfully and in bad faith refused to hire Ms. Holmes-Kriger for the Registrar position because Ms. Holmes-Kriger exercised her rights under the FMLA by taking intermittent leave to care for her daughter with a serious medical condition.

78.     Ms. Holmes-Kriger was highly qualified for the position and was certainly just as qualified as Mr. Hunter who was awarded the position by Dr. Boog.

79.     Ms. Holmes-Kriger would have been selected for the position if she had not taken intermittent FMLA leave.

**WHEREUPON**, Ms. Holmes-Kriger respectfully requests this Honorable Court grant the following relief:

A.      Declare SU violated Ms. Holmes-Kriger's rights under the FMLA;

B.      Enter judgment in favor of Ms. Holmes-Kriger and against SU for compensatory damages in the form of lost salary with fringe benefits from the date SU hired Mr. Hunter (and not her) for the Registrar position and extending for a reasonable period into the future;

C.      In addition to the foregoing actual damages, award Ms. Holmes-Kriger liquidated damages in an amount equal to her actual damages;

D.      Assess reasonable attorneys' fees and costs of suit in favor of Ms. Holmes-Kriger and against SU; and

E.      Award Ms. Holmes-Kriger prejudgment and post-judgment interest on her actual damages, liquidated damages, and attorney's fees; and

F.      Grant Ms. Holmes-Kriger such other and further relief as the nature of her cause may warrant.


## COUNT III
## DISABILITY DISCRIMINATION

80.     The facts alleged in paragraphs 1-72 are incorporated by reference.

81.     Dr. Boog, acting as the decisionmaker for SU, refused to promote Ms. Holmes-Kriger to Registrar and terminated her employment as Associate Registrar because of her known association or relationship with her daughter who has a disability.

**WHEREUPON**, Ms. Holmes-Kriger respectfully requests this Honorable Court grant the following relief:

A.      Enter a judgment in favor of Ms. Holmes-Kriger and against SU for compensatory damages in the form of lost wages and fringe benefits (past and future), emotional distress, and mental anguish;

B.      Enter a declaratory judgment that SU violated Ms. Holmes-Kriger's rights under the Rehabilitation Act;

C.      Assess reasonable attorneys' fees and costs of suit in favor of Ms. Holmes-Kriger and against SU; and

D.      Grant Ms. Holmes-Kriger such other and further relief as the nature of her cause may warrant.

_____/s/_____
ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax:  410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*