**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAMIE HOLMES-KRIGER                  *

    Plaintiff,                             *

    v.                                     *            Civil No.: BPG-20-568

SALISBURY UNIVERSITY                 *

    Defendant                              *

\*    \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 13). Currently pending are Salisbury University's Motion for Summary Judgment ("Motion") (ECF No. 26), plaintiff's Opposition to defendant's Motion for Summary Judgment ("Opposition") (ECF No. 27), and defendant's Reply in Support of Salisbury University's Motion for Summary Judgment ("Reply") (ECF No. 30). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, Salisbury University's Motion for Summary Judgment (ECF No. 26) is GRANTED.


## I.    <u>BACKGROUND</u>

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Plaintiff attended and subsequently worked on behalf of defendant for more than thirteen years. (ECF No. 27-1 at 1). In 2012, plaintiff was

promoted to Associate Registrar. (Id. at 2). In December 2018, plaintiff was granted intermittent leave pursuant to the Family Medical Leave Act ("FMLA") to care for her daughter who has a disability. (ECF No. 26-9 at 2). When plaintiff was granted FMLA leave, she received a letter that instructed her to "code the appropriate leave time" on her timesheets and to "indicate when FMLA time is used" in the "Note section." (Id.) Plaintiff stated, however, that she did not recall recording the FMLA time she used in the "Note" section of her timesheets, but instead that she reported to Human Resources ("HR") at the end of the calendar year how many hours of FMLA leave she had used. (ECF No. 26-5 at 57:16-58:7, 65:9-17, 161:3-9).

Plaintiff's supervisor when this FMLA leave was approved, defendant's registrar Ms. Jacqueline Maisel, also allowed plaintiff to work from home if her daughter was sick. (Id. at 91:14-21, 95:13-96:22, 110:19-111:8). Plaintiff believed at the time that this arrangement was part of her "FMLA plan," but this was not the case. (Id.). Ms. Maisel had permission from defendant's HR director to allow employees to work from home in special circumstances. (ECF No. 27-5 at 3). When plaintiff was working from home, she did not take leave of any kind, including FMLA leave, but instead counted it as work time. (ECF No. 26-5 at 56:11-15; 97:4-5). Between December 2018 when plaintiff was approved to use FMLA leave and October 3, 2019, plaintiff used 46 hours of FMLA leave. (ECF No. 26-12 at 2-29). During this same time span, plaintiff used 96 hours of holiday leave, 34.5 hours of non-FMLA sick leave, 17 hours of personal leave, 116 hours of annual leave, and 3 hours of administrative leave. (Id.)

Following Ms. Maisel's retirement, Dr. Melissa Boog became the interim registrar and plaintiff's supervisor as of July 1, 2019 while a national search was conducted to hire a new registrar. (ECF No. 26-2 at 9). In this role, Dr. Boog approved plaintiff's timecards and noticed that plaintiff marked hours as worked even when she was not in the office. (ECF No. 26-7 at 31:2-

4). While Dr. Boog had been told by Ms. Maisel that plaintiff had been approved for FMLA leave, neither Ms. Maisel nor plaintiff told Dr. Boog that plaintiff had permission to work from home. (ECF No. 27-5 at 4). Dr. Boog asked HR if there was an agreement allowing plaintiff to work from home, but HR stated that no such agreement was in place and that defendant did not have an official work from home policy. (ECF No. 26-7 at 32:4-12).

In August 2019, plaintiff submitted her application in response to the job posting for the registrar position. (ECF No. 27-10). Plaintiff was one of the three finalists selected by a search committee. Each finalist made a presentation at open sessions to the campus community in addition to meeting with the provost's council, the registrar's office staff, and Dr. Boog. (ECF No. 26-7 at 35:9-21). Written candidate evaluations were collected after each of these open sessions and meetings by the search committee and were reviewed by Dr. Boog. (Id. at 36:3-9). Among these evaluations, Dr. Boog received emails from the department chairs of the English and the History departments expressing concerns about plaintiff's responsiveness and professionalism. (ECF No. 26-26 at 35-36). Dr. Boog, in consultation with her supervisor Dr. Karen Olmstead, selected one of the other finalists, Mr. Martin Hunter for the registrar position. (ECF No. 26-7 at 40:18-47:9). Defendant maintains that Mr. Hunter was selected because of his ten years of experience as a registrar at other institutions and because he received the highest evaluations from the registrar's office staff. (Id.)

Dr. Boog met with plaintiff to inform her of this decision on October 3, 2019 (the "October meeting"). (Id. at 51:16-52:22). Dr. Boog shared the reasons why Mr. Hunter had been selected, and also informed plaintiff that evaluations had given rise to concerns about plaintiff's responsiveness and professionalism. (Id. at 54:5-8; ECF No. 26-5 at 83:10-11, 108:19-21, 109:20-110:2). Plaintiff stated "I don't understand. I'm on FMLA for [my daughter]. I have permission

to not be in the office." (ECF No. 26-5 at 83:14-16).  Additionally, plaintiff indicated that Ms. Maisel had given plaintiff permission to work from home.  (Id. at 91:8-21).  Dr. Boog responded, "It doesn't matter if you have permission or not.  It's people's perception, and the perception is you're not working enough."  (Id. at 83:17-20).  Dr. Boog stated that given plaintiff's role, she should be present and stay connected in order to manage the other members of the registrar's office, and that plaintiff no longer had permission to work from home.  (ECF No. 26-7 at 55:22-56:8).  Following this meeting, according to Dr. Boog, plaintiff told the registrar's office staff that "I'm sure you know that I didn't get the [registrar] job, thanks to you, and just so you know, things will be different around here moving forward."  (Id. at 63:20-64:3).

On Friday, October 25, 2019, a staff member in the registrar's office noticed that documents in their folder on the shared drive were missing and that other employees' files were also missing.  (Id. at 68:20-69:11).  The staff member contacted defendant's Office of Information Technology ("IT") to report the missing files.  (Id. at 69:12-14).  Plaintiff received an email from an IT specialist that several folders on the shared drive were empty and asked if the folders could be restored.  (ECF No. 27-15 at 2).  Plaintiff responded and said the folders could be restored and stated that she had been cleaning up her own files earlier that week.  (Id.)  The IT specialist restored the files.  (Id.)  IT reported to the registrar's office staff member who had inquired about the missing files that the files had been deleted but plaintiff had stated that IT could restore the files.  (ECF No. 26-7 at 69:14-17).  Dr. Boog contacted IT to follow up on this incident, and IT told her that plaintiff deleted over 2,000 files.  (Id. at 69:19-70:6).

The following Monday, October 28, 2019, plaintiff and Dr. Boog had a prescheduled meeting.  (Id. at 70:8-12).  Dr. Boog asked plaintiff about the deleted files and plaintiff explained that she had been deleting old and duplicate files earlier in the week.  (Id. at 71:1-3).  Plaintiff

stated that she only intended to delete her own files, not files of other staff members. (Id. at 71:8-9). Later in the week, Dr. Boog reported this event to her supervisor, Dr. Karen Olmstead. (Id. at 75:7-14). Dr. Olmstead was concerned about the file deletion incident and asked Dr. Boog to further investigate after Dr. Boog returned from her conference the following week. (Id. at 75:14-21).

On November 13, 2019, Dr. Boog met with HR employees Kevin Vedder and Marissa Chavez. (Id. at 77:17-78:6). Mr. Vedder assigned Ms. Chavez to investigate the file deletion incident. (Id. at 78:6-11). On November 14, 2019, Ms. Chavez began her investigation by interviewing plaintiff with Dr. Boog. (ECF No. 26-17 at 2). Ms. Chavez noted that plaintiff stated that she deleted her own files but not the files of others. (Id.) At the end of the interview, Ms. Chavez decided to place plaintiff on paid suspension while she continued the investigation. (ECF No. 26-7 at 83:14-19). Subsequently, Ms. Chavez and Dr. Boog interviewed eight registrar's office staff members and determined that plaintiff had deleted 2,273 files over the course of approximately three hours and 45 minutes.[1] (Id. at 79:1-18; ECF No. 26-18 at 8; ECF No. 26-27). An IT specialist examined the deleted files and stated that many of the files that had been deleted by plaintiff were not in her shared drive folders, meaning that it would have taken plaintiff multiple clicks to reach them and subsequently delete them. (ECF No. 26-7 at 79:1-18). Defendant believed that these facts indicated that plaintiff had intentionally, rather than mistakenly, deleted the files. (Id. at 80:13-21, 99:1-3). Additionally, due to this incident, three registrar's office staff members told Ms. Chavez and Dr. Boog that they could no longer trust plaintiff not to delete their shared drive files. (Id. at 101:12-17).

---

[1] According to plaintiff's termination letter, plaintiff deleted an additional 729 files between October 28, 2019 and November 13, 2019. (ECF No. 26-19 at 3).

Based on the number of files deleted, the time it took to delete the files, and the lack of trust from three members of the registrar's office staff, Dr. Olmstead, Mr. Vedder, Ms. Chavez, and Dr. Boog agreed that plaintiff should be terminated for cause. (Id. at 95:1-4, 103:1-6; ECF No. 26-23, 24:22-29:2). On November 22, 2019, Mr. Vedder emailed Dr. Boog and stated that terminating plaintiff for cause "was the best path given the more costly option of providing [plaintiff] with a period of notice separation that would be one year of salary plus benefits." (ECF No. 27-19 at 2). Subsequently, on December 3, 2019, Ms. Chavez and Dr. Boog met with plaintiff and informed her that her employment with defendant was terminated for cause, specifically gross misconduct and willful neglect of duty. (ECF No. 26-19). Plaintiff's termination letter indicated that she was terminated due to the deletion of thousands of files which violated defendant's Acceptable Use of Computing and Electronic Resources Policy ("Acceptable Use Policy"). (Id. at 3). On December 9, 2019, plaintiff appealed her termination to defendant's President, stating that defendant had retaliated against her for using FMLA leave. (ECF No. 27-22). On December 23, 2019, defendant's President denied plaintiff's appeal. (ECF No. 27-1 at 12).

On March 2, 2020, plaintiff filed suit against defendant in this court. (ECF No. 1). Plaintiff asserts three claims: 1) that defendant retaliated against her for using leave pursuant to the Family Medical Leave Act ("FMLA") by wrongfully terminating plaintiff; 2) that defendant retaliated against plaintiff for using FMLA leave by failing to promote plaintiff; and 3) that defendant discriminated against plaintiff because of "her known association or relationship with her daughter who has a disability" pursuant to Section 504 of the Rehabilitation Act of 1973. (Id. ¶ 81).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252.  In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient

to prevent an award of summary judgment.  <u>Anderson</u>, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  <u>Cox v. Cnty. of Prince William</u>, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 252.

## III.  <u>DISCUSSION</u>

Plaintiff maintains that defendant retaliated against her for using FMLA leave to care for her daughter (referred to as "FMLA retaliation claims") and that defendant discriminated against her because of plaintiff's association with her daughter, who had a known disability (referred to as "disability association claim").

With regard to plaintiff's FMLA retaliation claims, the FMLA allows eligible employees to use up to 12 weeks of leave during a 12-month period to care for a child with "a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  FMLA's "proscriptive provisions . . . protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA."  <u>Yashenko v. Harrah's NC Casino Co., LLC</u>, 446 F.3d 541, 546 (4th Cir. 2006) (citing <u>Hodgens v. Gen. Dynamics Corp.</u>, 144 F.3d 151, 159-60 (1st Cir. 1998); <u>Rice v. Sunrise Express, Inc.</u>, 209 F.3d 1008, 1017 (7th Cir. 2000)).  FMLA retaliation claims arise pursuant to 29 U.S.C. § 2615(a)(2), "which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'"  <u>Id.</u>  "[E]mployers are 'prohibited from discriminating against employees or prospective employees who have used FMLA leave' and . . . 'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or

disciplinary actions.'" Dotson v. Pfizer, Inc., 558 F.3d 284, 294-95 (4th Cir. 2009). FMLA retaliation claims require "proof of retaliatory intent." Bosse v. Baltimore Cnty., 692 F. Supp. 2d 574, 588 (D. Md. 2010).

With regard to plaintiff's disability association claim, plaintiff brings this claim pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Claims brought pursuant to Section 504 are analyzed under Title I of the Americans with Disabilities Act ("ADA"), which prohibits discrimination "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). For both plaintiff's FMLA retaliation claims and plaintiff's disability association claim, she must establish retaliation and/or discrimination through direct evidence or the McDonnell Douglas burden-shifting framework. Bosse, 692 F. Supp. 2d at 588.

### A.  Direct Evidence

Plaintiff first argues that, for her FMLA retaliation claims, direct evidence demonstrates that defendant discriminated against plaintiff due to her use of FMLA leave. (ECF No. 27-1 at 18). "[D]irect evidence must demonstrate that an adverse employment action was actually 'due to . . . FMLA leave as opposed to some other lawful reason.'" Sharif v. United Airlines, Inc., 841 F.3d 199, 205 (4th Cir. 2016) (quoting Laing v. Federal Exp. Corp., 703 F.3d 713, 718 (4th Cir. 2013)). Here, plaintiff points to Dr. Boog's retraction of plaintiff's agreement with her previous supervisor, Ms. Maisel, that plaintiff could work from home as needed to care for her daughter. (ECF No. 27-1 at 18). Plaintiff's work from home agreement, however, was separate and distinct from plaintiff's use of FMLA leave – in fact, when plaintiff worked from home, she did not take leave of any kind. (ECF No. 26-5 at 56:11-15; 97:4-5). Because plaintiff did not take leave when

she worked remotely, Dr. Boog's determination that plaintiff could no longer work from home was not related to plaintiff's use of FMLA leave. Accordingly, Dr. Boog's decision to not allow plaintiff to work from home does not demonstrate that defendant failed to promote or terminate plaintiff due to her use of FMLA leave "as opposed to some other lawful reason." Sharif, 841 F.3d at 205. Plaintiff also argues that Dr. Boog "exploited the deleted files incident as an opportunity to terminate" plaintiff for cause in order to keep plaintiff from receiving severance pay. (ECF No. 27-1 at 18). Yet, as discussed below, defendant maintains that plaintiff was terminated for cause due to the deletion of over 2,000 files without authorization which amounted to gross misconduct and willful neglect of duty. (ECF No. 26-2 at 28). Therefore, plaintiff has again failed to demonstrate direct evidence that she was terminated due to her use of FMLA leave as defendant argues that she was instead terminated because of the file deletions. Accordingly, plaintiff has not established a factual dispute regarding whether direct evidence indicates that defendant failed to promote her or terminated her in retaliation for her use of FMLA leave because a fair-minded jury could not return a verdict for plaintiff based on this evidence. Anderson, 477 U.S. at 252.


### B. McDonnell Douglas Framework

Since plaintiff fails to establish direct evidence of defendant's discriminatory or retaliatory intent, the McDonnell Douglas burden-shifting framework will be applied to plaintiff's FMLA retaliation claims and disability association claim. Westbrooks v. Baltimore Cnty., Maryland, No. SAG-18-1777, 2019 WL 3935355, at *8 (D. Md. Aug. 20, 2019) ("FMLA retaliation claims are analogous to Title VII retaliation claims."); Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1085 (10th Cir. 1997) ("[T]he McDonnell Douglas framework should similarly be applied to claims of 'association discrimination.'").

Under this framework, plaintiff must first establish a prima facie case for her FMLA retaliation claims by demonstrating "that [s]he engaged in protected activity, that [defendant] took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir.1998). Plaintiff must also establish a prima facie case for her disability association claim pursuant to Section 504: "1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Graziadio v. Culinary Institute of America, 817 F.3d 415, 432 (2d Cir. 2016); see also Valluzzi v. Azar, No. PX-18-3602, 2020 WL 128457, at *11 (D. Md. Jan. 10, 2020).

Next, if plaintiff successfully establishes these prima facie cases, defendant must offer a non-discriminatory explanation for the adverse actions. Then, plaintiff must rebut defendant's explanation as pretextual for retaliation and/or discrimination. Vannoy v. Fed. Reserve Bank of Richmond, 827 F.2d 296, 304 (4th Cir. 2016). In order "to prove by a preponderance of the evidence that the proffered reasons [for defendant's failure to promote plaintiff] were pretextual," Wright v. Southwest Airlines, 319 F. App'x 232, 233 (4th Cir. 2009), plaintiff must show "both that [defendant's] reason was false and that [retaliation or discrimination] was the real reason for the challenged conduct," or, in other words, that plaintiff would have been promoted or not terminated "but for [defendant's] retaliatory animus." Fry v. Rand Construction Corp., 964 F.3d 239, 246 (4th Cir. 2020) (quoting Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 252 (4th Cir. 2015)). "[P]laintiff must produce sufficient evidence to create a genuine dispute of

material fact that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, *i.e.*, retaliation." Sharif, 841 F.3d at 203. The "court must . . . evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." White v. W.R. Winslow Mem'l Home, Inc., No. 99-1781, 2000 WL 346947, at *2 (4th Cir. Mar. 15, 2000).

For the purposes of this motion, defendant does not dispute that plaintiff can establish a prima facie case regarding plaintiff's FMLA retaliation claims. (ECF No. 26-2 at 23, 27). Defendant does dispute whether plaintiff can establish a prima facie case for her disability association claim. Defendant acknowledges that plaintiff has met the first three elements – that plaintiff was qualified for the job at the time defendant failed to promote her and at the time defendant terminated her, that these adverse employment actions occurred, and that defendant knew that plaintiff's daughter had a disability. (ECF No. 26-2 at 33). Defendant asserts there is no evidence as to the fourth element of the claim to suggest that defendant's failure to promote plaintiff or defendant's termination of plaintiff "occurred under circumstances raising a reasonable inference that [plaintiff's daughter's] disability . . . was a determining factor." Graziadio, 817 F.3d at 432.

The court agrees that plaintiff has not established this prima facie case. "While temporal proximity alone often suffices to establish causal nexus and a prima facie case in other discrimination cases, here [plaintiff] must provide some factual support to raise an inference of association discrimination." Aguirre v. Mayaguez Resort and Casino, Inc., 59 F. Supp. 3d 340, 353 (D.P.R. 2014) (citing Larimer v. Int'l Bus. Machs. Corp., 370 F.3d 698, 701 (7th Cir. 2004)). Plaintiff argues that it is inconceivable that plaintiff, who had a long history of working for

defendant, was terminated simply because of the file deletions, especially when Dr. Boog had made a comment to plaintiff in the October meeting not long before that there was a perception that plaintiff was not working enough. (ECF No. 27-1 at 21-22). As defendant notes, however, plaintiff was not promoted to registrar for a number of reasons, not just because of her presence or lack thereof in the office – the selected candidate, Mr. Hunter, had more experience and had better reviews from the registrar's office staff than plaintiff. (ECF No. 26-2 at 34). Moreover, there is absolutely no evidence supporting any causal connection between plaintiff's association with her daughter and/or her daughter's disability and the adverse employment actions at issue. (Id.) Therefore, plaintiff fails to establish a prima facie case for her disability association claim.

Regardless of whether plaintiff can establish a prima facie case for either the FMLA retaliation claims or the disability association claim, there is no genuine issue of material fact to indicate that defendant's reasons for failing to promote her and for terminating her were discriminatory due to either plaintiff's use of FMLA leave or plaintiff's association with her daughter. The court examines below, for both plaintiff's FMLA retaliation claims and disability association claim, defendant's reasoning for the failure to promote plaintiff and for the termination of plaintiff, and plaintiff's arguments regarding why defendant's reasoning is pretextual.

### a. Failure to Promote Plaintiff

After plaintiff establishes a prima facie case, defendant must provide its nondiscriminatory reasons for the adverse actions and plaintiff must rebut these reasons and show that they are pretextual for retaliation and/or discrimination. Vannoy, 827 F.2d at 304. With regard to the failure to promote plaintiff, defendant asserts that Mr. Hunter, the successful applicant, was more qualified than plaintiff because he had ten years of experience as a registrar at other institutions while plaintiff had no experience in the position. (ECF No. 26-2 at 24). Defendant also argues

that Mr. Hunter was selected because he received higher ratings from the registrar's office staff than plaintiff.  (Id.)  Finally, defendant maintains that feedback received through the registrar hiring process "raised concerns about [plaintiff's] ability to get along with people, her communication style, her professionalism, and her availability and responsiveness to faculty and staff."  (Id.)  Plaintiff maintains that defendant's explanation is pretextual because Dr. Boog told the chair of the registrar search committee that plaintiff was lying on her timecards, Dr. Boog told plaintiff that "she needed to be in the office more to be a successful candidate," and defendant ignored the many positive reviews of plaintiff when making their hiring decision.  (ECF No. 27-1 at 20).

Plaintiff first argues that Dr. Boog told Ms. Pilchard, the chair of the search committee for the registrar, that plaintiff had been lying on her timecards.  (ECF No. 27-1 at 20).  Plaintiff does not offer any evidence of this, and both Dr. Boog and Ms. Pilchard deny that Dr. Boog made this statement.  (ECF No. 30-2 at 47:10-19; ECF No. 30-4 at 19:7-9, 26:4-7).  Additionally, plaintiff does not offer a reason as to why, even if this statement had been made, it would generate a factual dispute as to whether defendant's reasons for failing to promote her were discriminatory.  Even if there was support for plaintiff's assertion, it would not constitute evidence of pretext because it appears there were inconsistencies in plaintiff's timesheet as she had not been coding her leave, nor her hours spent working from home, on her timesheets as she should have.  (ECF No. 30 at 7 n.2; ECF No. 30-2 at 31:2-4).  Dr. Boog noted that there were times that plaintiff noted on her timesheet that she was working, but plaintiff was not in the office.  (ECF No. 30-2 at 31:2-4).  Dr. Boog and plaintiff discussed this at their October meeting and Dr. Boog noted that she needed to correct this.  (Id. at 54:14-55:2).  Therefore, plaintiff's unsupported assertion does not establish a

genuine issue of material fact regarding whether defendant's reasons for failing to promote her were pretextual.

Plaintiff's next argument is that Dr. Boog's comment to plaintiff that "the perception is you're not working enough" indicates that plaintiff was not promoted because of her use of FMLA leave. (ECF No. 27-1 at 20). Plaintiff's arrangement with Ms. Maisel to work at home, however, was separate from her authorization to use FMLA leave. In fact, plaintiff admits that when she was working at home, she was not using leave of any kind. (ECF No. 26-5 at 56:11-15; 97:4-5). Additionally, plaintiff took only 46 hours of FMLA leave between December 2018 and the October meeting with Dr. Boog. (ECF No. 26-12 at 2-29). In comparison, during the same timeframe, plaintiff took over 250 hours of other types of leave such as holiday leave, personal leave, and annual leave. (Id.) Therefore, FMLA leave was but a small portion of the significant amount of leave plaintiff used and there is nothing in the record to indicate that plaintiff's modest use of FMLA leave was the reason that Dr. Boog would comment about plaintiff's availability. Under these circumstances, Dr. Boog's feedback to plaintiff about the perception that she was not working enough does not generate a factual issue that defendant's reasons for not selecting plaintiff were pretextual.

Plaintiff also maintains that defendant ignored the many positive reviews she received during the registrar search process. While plaintiff did receive positive reviews, there were also several reviews that stated plaintiff was not the best candidate and specific emails from two department heads about concerns regarding plaintiff's responsiveness and professionalism. (ECF No. 26-26 at 35-36). The fact that plaintiff had some positive reviews is inadequate, by itself, to create a factual issue that defendant's nondiscriminatory reasons for failing to promote plaintiff were pretextual.

In sum, plaintiff has failed to establish a genuine issue of material fact that defendant's reasons for not promoting her were pretextual. "[I]n demonstrating [defendant's] decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'" Adams v. Trustees of Univ. of North Carolina-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (quoting Jiminez v. Mary Washington Coll., 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original). There is no factual dispute regarding defendant's legitimate nondiscriminatory reasons for hiring the successful candidate, Mr. Hunter, in that he had ten years of experience as a registrar while plaintiff had no experience and that Mr. Hunter's evaluations from the registrar's office staff were more favorable than plaintiff's evaluations. In light of these undisputed facts and the lack of any evidence of pretext, plaintiff has not offered evidence that defendant's discrimination was the "but for" cause of defendant's failure to promote plaintiff. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)). Accordingly, plaintiff has failed to generate a factual dispute regarding whether defendant's decision to hire Mr. Hunter as registrar was not because of his qualifications and evaluations, but instead because defendant was retaliating against plaintiff for her use of FMLA leave and/or was discriminating against plaintiff due to her association with her daughter who had a known disability. Therefore, summary judgment for defendant for plaintiff's FMLA retaliation claims and disability association claim with regard to defendant's failure to promote her is appropriate.

### b. Termination of Plaintiff

With regard to plaintiff's termination, defendant maintains that plaintiff was "[t]erminated for cause because an investigation revealed that she intentionally deleted over 2,000 University files without permission, without informing her supervisor, and without keeping a record of the files she deleted." (ECF No. 26-2 at 27). Defendant further argues that even if plaintiff deleted the files accidentally rather than purposefully, there is no evidence to suggest that plaintiff was terminated for any reason other than her gross misconduct for deleting the files without authorization. (Id. at 31). Plaintiff argues that these explanations are pretextual for several reasons: 1) Mr. Vedder's and Dr. Boog's inconsistent explanations as to why plaintiff was terminated; 2) Mr. Vedder's email stating that defendant would save money if plaintiff was terminated for cause; and 3) the series of events surrounding the deletion of the files that plaintiff argues make it implausible that she committed gross misconduct. (ECF No. 27-1 at 19-20).

Regarding plaintiff's first argument, Mr. Vedder testified that plaintiff was terminated in part because she committed willful neglect of duty when she did not take accountability for, or admit to, deleting any files. (ECF No. 27-17 at 26:21-27:18). Dr. Boog testified that plaintiff was terminated because she deleted a large number of files that were critical to the registrar's office. (ECF No. 27-9 at 96:8-11). Plaintiff maintains that these purportedly inconsistent reasons for plaintiff's termination create a genuine issue of material fact regarding whether defendant's explanations for plaintiff's termination are pretextual. (ECF No. 27-1 at 19). While plaintiff cites to caselaw indicating that inconsistent explanations may indicate pretext, Mr. Vedder's and Dr. Boog's explanations "do not contradict each other, but rather reflect various consistent reasons" as to why plaintiff was terminated. Baldwin v. England, 137 F. App'x 561, 564 (4th Cir. 2005). Both Mr. Vedder and Dr. Boog consistently state that plaintiff was terminated due to the same

event, that is, plaintiff's deletion of the files. "Where different, but not inconsistent reasons are offered, a finding of pretext is unwarranted." <u>Sanders v. Wal-Mart Supercenter of Aiken, SC</u>, No. JMC-14-3509, 2016 WL 1156648, at *10 (D.S.C. Mar. 24, 2016) (citing authority), <u>aff'd sub nom.</u> <u>Sanders v. Wal-Mart Stores E., L.P.</u>, 686 F. App'x 240 (4th Cir. 2017); <u>see also</u> <u>Hux v. City of Newport News, Va.</u>, 451 F.3d 311, 315 (4th Cir. 2006) ("[A] plaintiff cannot seek to expose [a] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.").[2]  Therefore, plaintiff has failed to show that Mr. Vedder's and Dr. Boog's articulated reasons for plaintiff's termination are inconsistent so as to create a factual dispute regarding pretext.

Next, plaintiff maintains that an email from Mr. Vedder to Dr. Boog during the HR investigation indicates that defendant "drummed up 'cause' for [plaintiff's] termination to avoid having to pay her a year's severance." (ECF No. 27-1 at 23).  In this email, Mr. Vedder indicated that plaintiff would be terminated for cause due to "the file deletions in addition to other performance related concerns . . . I think it is the best path given the more costly option of providing [plaintiff] with a period of notice separation that would be one year of salary plus benefits." (ECF No. 30-16 at 2).  Yet, there is nothing in Mr. Vedder's email to indicate that defendant was terminating plaintiff because of her use of FMLA leave – he clearly states that

---

[2] The facts of this case are dissimilar to those found in the cases cited by plaintiff, in which employers completely changed their rationale and explanation for the employee's termination throughout the course of litigation. <u>See, e.g.</u>, <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424 (1st Cir. 2000) (defendant first stated that plaintiff's position was eliminated due to company restructuring; then changed to plaintiff's performance issues; then changed to plaintiff's insubordination); <u>Thurman v. Yellow Freight Sys., Inc.</u>, 90 F.3d 1160 (6th Cir. 1996) (defendant did not initially state that plaintiff was terminated because of performance issues, but later stated during discovery that plaintiff was terminated because of performance); <u>EEOC v. Ethan Allen, Inc.</u>, 44 F.3d 116 (2d Cir. 1994) (defendant initially stated that plaintiff was terminated because of a decrease in work, but then said plaintiff was terminated due to performance issues after discovery revealed that plaintiff's duties had been reassigned to another employee).

plaintiff was being terminated for cause because of the file deletions. "The FMLA does not prevent an employer from terminating an employee for . . . misconduct . . . ." Vannoy, 827 F.3d at 304-05. Additionally, there is no evidence in the record to indicate that Mr. Vedder had any discriminatory or "retaliatory animus" towards plaintiff regarding her use of FMLA leave or her association with her daughter. Fry, 964 F.3d at 246. There is also no evidence that Dr. Boog somehow directed Mr. Vedder to participate in retaliatory or discriminatory behavior. Accordingly, the email from Mr. Vedder does not constitute evidence of pretext.

Plaintiff's third argument is that defendant's termination of plaintiff for gross misconduct and willful neglect of duty is not plausible. (ECF No. 27-1 at 20, 15-16). First, plaintiff believes the files she deleted were innocuous and that deleting them was not disruptive because other registrar's staff members did not realize the files had been deleted for several days. (ECF No. 27-1 at 20, 15-16). Yet, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Fry, 964 F.3d at 248. Here, defendant believed that the files were important as they contained files that were "essential to the day-to-day operations of the registrar's office." (ECF No. 30 at 16). Additionally, three members of the registrar's office staff indicated that they felt they could not trust plaintiff not to delete their files in the future and would change their work processes in order to protect their files. (Id.) This evidence clearly shows that defendant believed that plaintiff's deletion of the files was disruptive to the registrar's office. Plaintiff's "self-assessment" about the importance of these files and the amount of disruption caused by their deletion does not generate a factual dispute regarding whether defendant impermissibly discriminated against plaintiff for her use of FMLA leave or because of her association with her daughter.

Plaintiff also argues that the approximate two-week gap between when the file deletion occurred and when plaintiff was suspended pending defendant's investigation indicates pretext. (Id.)  Defendant explains, however, that Dr. Boog addressed the file deletion with plaintiff only a few days after Dr. Boog was made aware by IT of the deletions.  (ECF No. 30-2 at 70:8-71:22). Following that meeting, Dr. Boog discussed the event with her supervisor Dr. Olmstead, who advised Dr. Boog to discuss the incident with HR.  (Id. at 75:21-76:3).  As Dr. Boog was out of the office at a conference, she contacted HR when she returned the following week.  (Id. at 75:16-78:6).  After Dr. Boog contacted HR and spoke with Mr. Vedder and Ms. Chavez, an investigation was opened, and plaintiff was interviewed the following day.  (Id. at 78:6-9, 83:1-14).  The record includes no facts to indicate that the investigation had any connection to plaintiff's use of FMLA leave or plaintiff's association with her daughter with a known disability.  Additionally, plaintiff's argument that defendant allowed her to continue working and did not prevent her from deleting any further files after her initial conversation with Dr. Boog does not aid plaintiff's ability to establish a factual dispute regarding defendant's reasons for terminating her.  Plaintiff was not suspended until the investigation began and was not terminated until the investigation was complete.

Plaintiff maintains that she deleted the files by mistake, and that "it was unreasonable for [defendant] to conclude that she intentionally deleted thousands of University files because she teaches a computer course, knows how computers work, did not attempt to conceal her actions, and was loyal to [defendant]."  (ECF No. 30 at 18).  Defendant asserts that it had a legitimate basis for concluding that the file deletion was not a mistake because plaintiff deleted over 2,000 files, the deletions took plaintiff over three hours, and IT advised that it would have taken multiple clicks

for plaintiff to reach and subsequently delete each file.[3]  (Id.)  The question for the court, however, is not whether defendant's decision was reasonable or fair, Hawkins, 203 F.3d at 279, but rather whether there is evidence of pretext.  Plaintiff's self-characterization of her deletion of the files does not constitute evidence of pretext.

Plaintiff notes that she routinely received positive reviews from her former supervisor, Ms. Maisel.  (ECF No. 1 ¶ 19).  But plaintiff was terminated for the file deletions, which occurred after these positive evaluations.  Therefore, the evaluations do not constitute evidence of pretext where the basis of termination was a discrete series of events occurring after the evaluations.  See Bennett v. Kaiser Permanente, 931 F. Supp. 2d 697, 706 (D. Md. 2013) ("The 14-month gap between [p]laintiff's performance review and the acts for which [d]efendant fired him renders the performance review irrelevant."); Kremp v. Wachovia Bank, N.A., No. GEB-09-2847, 2010 WL 4004481, at *6 (D.N.J. Oct. 12, 2010) ("[B]ecause the events that [defendant] asserts gave rise to [p]laintiff's termination were not discovered or did not occur until roughly six months after the most recent evaluation, this evidence cannot establish pretext as a matter of law.").

In sum, plaintiff's view that defendant's decision to terminate her was unreasonable does not generate a factual dispute about whether defendant's reason for terminating plaintiff was pretextual.  "[I]t is not [the court's] province to decide whether the reason [for termination] was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination."  Hawkins, 203 F.3d at 279 (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).  "[C]ourts are not 'a kind of super-personnel department weighing the prudence of employment decisions.'"  Sharif, 841 F.3d at 206 (quoting DeJarnette, 133 F.3d at 299).  Plaintiff has failed

---

[3] In addition, defendant asserts that plaintiff's comment to the registrar's office staff, that "things will be different around here moving forward" following plaintiff's failure to be promoted to registrar, is further evidence that plaintiff intentionally deleted the files.  (ECF No. 30 at 18).

to offer sufficient evidence from which a reasonable jury could find defendant's reasons for its employment decisions were pretextual and, therefore, were made in retaliation for plaintiff's use of FMLA leave or were based on disability association discrimination. <u>Celotex</u>, 477 U.S. at 324. Accordingly, summary judgment for defendant is warranted.

### C. <u>CONCLUSION</u>

For the foregoing reasons, Salisbury University's Motion for Summary Judgment (ECF No. 26) is GRANTED. A separate order will be issued.

July 12, 2021            _____/s/_____
Beth P. Gesner
Chief United States Magistrate Judge